UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSS TAUB,<br><br>    Plaintiff,<br><br>v.<br><br>PARKER JEWISH INSTITUTE FOR HEALTH CARE AND REHABILITATION, et al.,<br><br>    Defendants. | Case No. 18-cv-07491-RS<br><br>**ORDER DENYING MOTION TO DISMISS ON JURISDICTIONAL GROUNDS AND GRANTING MOTION TO DISMISS FOR *FORUM NON CONVENIENS*** |

## I. INTRODUCTION

Plaintiff Ross Taub brings suit against Defendants Parker Jewish Institute for Health Care and Rehabilitation ("Parker") and Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrare, Wolf & Carone, LLP ("Abrams LLP") (collectively, "Defendants") for alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), California Civil Code §§ 1788-1788.33, and California's Unfair Competition Law ("UCL"), California Business and Professions Code sections 17200, *et seq.* Abrams LLP moves to dismiss for lack of personal jurisdiction, improper venue, and *forum non conveniens*. Parker joins Abrams LLP's motion only as to *forum non conveniens*. This matter is suitable for disposition without oral argument pursuant to Civil Local Rule 7-1(b). For the reasons explained below, while personal jurisdiction is appropriately exercised here, the Defendants' alternate motion to dismiss for *forum non conveniens* must be granted.

## II. BACKGROUND[1]

In November 2016, Taub helped to admit his cousin, Susan Slavetsky, to Parker's facility as a patient. As part of the admissions process to Parker, Taub signed the Admission Agreement as the Resident Representative, whereby Taub agreed to provide Parker with his cousin's financial resources to pay for her care. Also contained in the agreement was explicit language reflecting that Taub, as the Resident Representative, was not personally responsible for the cost of care from his personal assets. A forum-selection clause was included in the agreement, designating New York state court as the appropriate forum for all actions arising from or related to the contract. (Darmstadt Decl. ¶ 4.) Slavetsky ultimately died at the Parker facility.

On July 12, 2017, Taub received at his California address a collection letter from Defendants informing him that he owed $71,636.35 and that he could be responsible to Parker for damages that flowed from his apparent breach of the Admission Agreement. Abrams LLP was apparently retained by Parker to collect the debt. Subsequently, on December 15, 2017, Defendants filed a collection lawsuit in New York state court against Taub in an attempt to collect the debt. In addition to hiring an attorney to defend himself in the New York action, Taub filed a complaint with the New York Attorney General regarding the lawsuit. The Attorney General's office sent a letter to Abrams LLP requesting that the Defendants withdraw their lawsuit in light of the Admission Agreement's terms barring Taub from being held personally responsible for the cost of care from his personal assets.

On December 13, 2018, Taub filed suit against Abrams LLP and Parker asserting violations of the FDCPA, the Rosenthal Act, and the UCL. Parker answered the Complaint in April 2019. That same day, Abrams LLP filed the present motion, which Parker joins only as to the motion to dismiss for *forum non conveniens*.

---

[1] The factual background is based on the averments in the Complaint, which must be taken as true for purposes of this motion.

## III. LEGAL STANDARD

An action is subject to dismissal if the court lacks personal jurisdiction over the defendants. *See* Fed. R. Civ. P. 12(b)(2). Where there is no federal statute applicable to determine personal jurisdiction, a district court should apply the personal jurisdiction law of the state where the federal court sits. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). California law requires only that the exercise of personal jurisdiction comply with federal due process requirements. *See id.* at 800-01. Personal jurisdiction over a defendant that does not reside in the forum state may be exercised consistent with due process if the defendant has either a continuous and systematic presence in the state (general jurisdiction), or minimum contacts with the forum state such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice" (specific jurisdiction). *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks and citation omitted); *see also Daimler AG v. Bauman*, 571 U.S. 117, 126-27 (2014) (outlining the distinction between the two forms of jurisdiction).

If personal jurisdiction is challenged, the plaintiff bears the burden of establishing the district court's personal jurisdiction over the defendant. *See Schwarzenegger*, 374 F.3d at 800. However, when the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdiction to avoid the motion to dismiss. *See id.* While a district court's jurisdictional analysis must consider plaintiffs' uncontroverted allegations to be true, a plaintiff may not simply rest on the "bare allegations of the complaint[.]" *Schwarzenegger*, 374 F.3d at 800 (internal quotation marks and citation omitted). "Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Id.*; *see also Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) ("Because the prima facie jurisdictional analysis requires us to accept the plaintiff's allegations as true, we must adopt [the plaintiff's] version of events for purposes of this appeal."), *overruled on other grounds by Yahoo! Inc. v. La Ligue Contre La Racisme et L'Antisemitisme*, 433 F.3d 1199, 1206-07 (9th Cir. 2006) (en banc).

## IV. DISCUSSION

**A. Personal Jurisdiction**

As Taub does not suggest general jurisdiction could attach to Abrams LLP, the operative jurisdictional question concerns specific jurisdiction. Such personal jurisdiction can be exercised over a non-resident defendant when three requirements are satisfied: "(1) The nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its law; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Schwarzenegger*, 374 F.3d at 802 (citation omitted). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Id.* "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

The Ninth Circuit has explained that "purposeful direction" and "purposeful availment" are "two distinct concepts." *Schwarzenegger*, 374 F.3d at 802. "A purposeful direction analysis . . . is most often used in suits sounding in tort," while "[a] purposeful availment analysis is most often used in suits sounding in contract." *Id.* However, "there is no absolute rule prohibiting the application of either test[.]" *Lang v. Morris*, 823 F. Supp. 2d 966, 970 (N.D. Cal. 2011). The parties make no representation as to which test should govern, therefore the purposeful direction test will be used as this case sounds in tort.

To establish personal jurisdiction under this standard, Taub must satisfy the three-part *Calder* standard. *Schwarzenegger*, 374 F.3d at 803 (citing *Calder v. Jones*, 465 U.S. 783 (1984)). This standard "requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (citation omitted). Even a single act of availment can, in some

instances, suffice to establish specific jurisdiction over a nonresident defendant. *See Yahoo!*, 433 F.3d at 1210 (holding when the defendant's contacts with the forum are directly related to the lawsuit, "[a] single forum state contact can support jurisdiction"); *see also Burger King*, 471 U.S. at 475 n.18 (holding that even a "single act" by the defendant can support jurisdiction, but only if that act creates a "substantial connection" with the forum).

Taub avers two intentional acts by Abrams LLP that were expressly aimed at California and caused harm to Taub that Abrams LLP knew was likely to be suffered in California: the July 2017 letter and the December 2017 service of the New York complaint. The sending of both of these documents to Taub in California were indeed intentional acts that were expressly addressed to Taub's California address. Moreover, Abrams LLP knew the documents would have an effect in that state by informing Taub of its pursuit of the allegedly unlawful debt: it had not engaged in "mere untargeted negligence," but intentionally targeted California. *Calder*, 465 U.S. at 789; *Yahoo!*, 433 F.3d at 1206.

Abrams LLP asserts for the first time in its Reply that neither the July 2017 letter nor the December 2017 service of the New York complaint can serve as a basis for jurisdiction. Since these arguments were not presented in its initial motion to dismiss, they are improperly presented in its Reply and effectively waived. This is particularly so since Taub has not had an opportunity to file a surreply to address the new arguments raised in the Reply.[2]

Even considering the merits of Abrams LLP's arguments, however, they still do not provide an effective obstacle to Taub's burden under the first two prongs of the jurisdictional analysis. To start, Abrams LLP contends the July 2017 letter is time-barred by the FDCPA's one-year statute of limitations. 15 U.S.C. § 1692k(d). Abrams LLP is correct, as the letter was dated July 12, 2017, while Taub filed his Complaint on December 13, 2018. The service of the New York complaint, however, would not be time-barred, as that lawsuit was filed on December 15, 2017, with service of process presumably occurring some time afterward.

---

[2] Taub has not requested leave to file a surreply.

Abrams LLP asserts the service of the New York complaint cannot serve as a basis for personal jurisdiction because the FDCPA allows an action on a debt to be brought in the judicial district where the consumer resides at the commencement of the action or in which the consumer signed the contract. 15 U.S.C. § 1692i(a)(2); *Fox v. Citicorp Credit Servs.*, 15 F.3d 1507, 1511 (9th Cir. 1994). According to Abrams LLP, since the contract giving rise to the purported debt was signed in New York, and the statute contemplates that an action on a debt may be brought outside the judicial district of the consumer's residence, it stands to reason that the consumer may be served with process at his or her residence without creating personal jurisdiction in a subsequent FDCPA suit based on that action. The argument is unpersuasive for several reasons.

First, while the FDCPA permits an action on a debt to be brought in the judicial district where the consumer signed the contract, the statute also explicitly states that "[n]othing in this subchapter shall be construed to *authorize* the bringing of legal actions by debt collectors." 15 U.S.C. § 1692i(b). Simply because the FDCPA sanctioned the lawsuit's *venue* does not mean the statute authorized the *lawsuit* itself. Indeed, Taub's basic contention is that the New York lawsuit was an improper attempt to collect an illegal debt. Moreover, the purpose of the statute's venue provision was to protect consumers from having to defend against debt-collection suits in distant or inconvenient courts. *Fox*, 15 F.3d at 1515. The statute is silent with regard to where a debt-collection suit, itself, was an improper attempt to collect an unlawful debt.

The Ninth Circuit has not explicitly held whether the service of a complaint in connection with a lawsuit pursuing an illegal debt can give rise to a FDCPA cause of action. A discussion of the Ninth Circuit's decision in *Yahoo!*, however, is instructive. In *Yahoo!*, the Ninth Circuit applied the effects test in a case that was neither a tort nor a contract case, but where a plaintiff argued a French court's interim orders directing it to take actions in California on threat of a substantial penalty were unenforceable in an American court because those orders were contrary to the First Amendment. *Yahoo!*, 433 F.3d at 1206. The court held the service of documents by defendant on plaintiff in connection with a suit brought in a foreign court could not, on its own, justify the exercise of personal jurisdiction over a foreign litigant in a United States court. *Id.* at

1209. The Ninth Circuit reasoned that to hold otherwise would provide a forum-choice tool by which "any United States resident sued in a foreign country and served in the United States could bring suit in the United States, regardless of any other basis for jurisdiction." *Id.*

This case is distinguishable from *Yahoo!* because the service of the New York complaint is akin to a letter demanding payment of an unlawful debt. *Cf. Patterson v. Latimer Levay Jurasek LLC*, No. 09-cv-0567-IEG-POR, 2009 WL 1862427 (S.D. Cal. June 29, 2009) (holding there was personal jurisdiction over defendant in a FDCPA action based upon a single debt collection letter sent by defendant to plaintiff in plaintiff's forum). The complaint accuses Taub of owing a purportedly unlawful debt and not only demands payment of the debt but serves as proof that Abrams LLP had begun with litigation to pursue that debt. Taub alleges the *complaint itself* is a source of harm, not simply the fact that he was sued in a foreign forum. Thus, there is an additional basis to exercise personal jurisdiction over Abrams LLP besides the service of documents in connection with its litigation in New York state court. Taub has satisfied his burden under the first prong of the jurisdictional analysis. Furthermore, Taub's claims arise out of and are related to Abrams LLP's forum-related activities at least with regard to the December 2017 service of the New York complaint, thereby satisfying his burden under the second prong of the analysis.

Under Ninth Circuit precedent, if Taub can satisfy the first two prongs of the analysis, personal jurisdiction is "presumptively reasonable." *Sher v. Johnson*, 911 F.2d 1357, 1364 (9th Cir. 1990). To overcome this presumption, Abrams LLP must present a "compelling case" that the exercise of jurisdiction would not be reasonable. *Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007) (internal quotation marks omitted). To make a compelling case, Abrams LLP must do more than demonstrate that some other forum is more reasonable than California. *Sher*, 911 F.2d at 1365. Instead, Abrams LLP must show that the exercise of jurisdiction in California would make the litigation "so gravely difficult and inconvenient that a party unfairly is at a disadvantage in comparison to his opponent." *Id.* (quoting *Burger King*, 471 U.S. at 478). Abrams LLP has not satisfied this heavy burden.

In determining whether the exercise of jurisdiction over a nonresident defendant is

reasonable, seven factors are considered: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Menken*, 503 F.3d at 1060. "None of the factors is dispositive in itself; instead, [courts] must balance all seven." *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1075 (9th Cir. 2001) (internal quotation marks omitted). These factors weigh in favor of exercising jurisdiction over Abrams LLP in this forum.

First, Abrams LLP purposefully interjected itself into California by intentionally sending the New York complaint to Taub. Second, the modern-day ease of communication and relative ease of travel make it reasonable to require Abrams LLP to defend in this forum. As to the third and fourth factors, both California and New York have an interest in this litigation. California has an interest in protecting its citizens from abusive debt collection practices, 15 U.S.C. § 1692(e), and New York is interested in regulating the activities of debt collectors in that state. *Id.* Abrams LLP has not shown that the exercise of jurisdiction in California would make litigation "so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent." *Burger King*, 471 U.S. at 478. Fifth, the controversy can be efficiently resolved in the Northern District of California because of the close proximity of witnesses and evidence. Sixth, a substantial portion of the acts giving rise to the FDCPA claim occurred in the forum. Seventh, an alternative acceptable forum does exist, New York, weighing in favor of transfer. Such a transfer, however, would create a significant economic hardship to an individual party like Taub who might elect to forego vindicating his rights under the FDCPA rather than incurring the cost of travel and retaining out-of-district counsel licensed in New York. *See Vaile v. Nat'l Credit Works, Inc.*, No. CV-11-674-PHX-LOA, 2012 WL 1520120, at *5 (D. Ariz. Mar. 26, 2012), *report & recommendation adopted by* No. CV-11-674-PHX-SMM-LOA, 2012 WL 1520115. Here, Abrams LLP may be able to show it will be inconvenienced, but this does not qualify as a "severe

disadvantage." *Sher*, 911 F.2d at 1365. Therefore, the exercise of specific jurisdiction over Abrams LLP is fair, just, and reasonable.

### B. Improper Venue

Abrams LLP argues venue is improper under 28 U.S.C. section 1391(b) because none of the defendants or witnesses reside in California and none of the underlying actions or alleged wrongful conduct occurred in California. Section 1391(b) governs venue in federal question cases. This case may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. § 1391(b)(2). Both Abrams LLP and Parker reside in New York, therefore the Northern District of California is the appropriate venue only if Taub's claims arose there.

Congress adopted the FDCPA due to concerns regarding the harmful effects of abusive debt practices on consumers. *See* 15 U.S.C. § 1692(a). As this harm cannot occur until the collection notice is received, other circuits have held that receipt of a collection notice is a substantial part of the events giving rise to a claim under the FDCPA. *See Bates v. C&S Adjusters, Inc.*, 980 F.2d 865, 868 (2d Cir. 1992). As discussed, service of the New York complaint upon Taub is the equivalent of the receipt of a collection notice. Additionally, courts will not permit a debt collector to violate the FDCPA in other districts, and then force consumers to travel to its district to file suit. *Patterson*, 2009 WL 1862427, at *4. Accordingly, venue is proper in the Northern District of California.

In the alternative, Abrams LLP moves to transfer venue pursuant to 28 U.S.C. section 1404(a) to New York state court because the Admission Agreement contains a valid forum-selection clause designating that forum for all actions arising from or related to the Admission Agreement. (*See* Darmstadt Decl. ¶ 4.) The appropriate mechanism to enforce a forum-selection clause pointing to a state forum, however, is through the doctrine of *forum non conveniens*. *Atl. Marine Constr. Co. v. District Court*, 571 U.S. 49, 60 (2013). Section 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the *federal* court system. *Id.* Abrams LLP contends in Reply that the case may

instead be transferred to the Northern District of New York, but not only is Abrams LLP barred from making new arguments in its Reply, it is estopped from advocating the transfer of the case to a different forum than that provided for in the forum-selection clause.[3] Both Abrams LLP and Parker, however, do move to dismiss for *forum non conveniens* as their final argument for dismissal, and it is this motion that the Defendants' contentions bear fruit.

### C. Forum Non Conveniens

The Supreme Court held in the seminal case of *Atlantic Marine* that when the parties have agreed to a valid forum-selection clause, a district court should transfer the case to the specified forum except under extraordinary circumstances unrelated to the convenience of the parties. *Atl. Marine*, 571 U.S. at 62. In the typical case not involving a forum-selection clause, a district court considering a *forum non conveniens* motion must evaluate both the convenience of the parties and various public interest considerations.[4] *Id.* at 62. The Supreme Court explains, however, that the calculus changes when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum. *Id.* at 63; *see also id.* at 66 n.8 (holding the altered calculus for motions to transfer under section 1404 applies also to motions to dismiss for *forum non conveniens* in cases involving valid forum-selection clauses pointing to state or foreign forums). In such circumstances, the plaintiff's choice of forum merits no weight and, as the party defying the forum-selection clause, bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted. *Id.* Additionally, the private interest

---

[3] The Northern District of New York does not appear to be the appropriate federal district forum in any event, as both Abrams LLP and Parker appear to be based on Long Island, which is within the Eastern District of New York.

[4] Factors relating to the parties' private interests include the relative ease of access to sources of proof; the availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of witnesses; the possibility of view of the premises, if such view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981). Public interest factors may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law. *Id.* A court must also give some weight to the plaintiff's choice of forum. *Atl. Marine*, 571 U.S. at 62 n.6.

factors must be deemed to weigh entirely in favor of the preselected forum, and only arguments regarding the public interest factors may be considered. *Id.* at 64. The Supreme Court has warned that the public interest factors will rarely defeat a transfer motion, such that the "practical result is that forum-selection clauses should control except in unusual cases."[5] *Id.*

Taub advances a number of theories as to why the forum-selection clause should not govern the *forum non conveniens* analysis, none of which are persuasive. First, by making these arguments, Taub effectively concedes the existence of the forum-selection clause, even though none of the parties provided a copy of the Admission Agreement and Defendants only provide an excerpt of the clause in declarations. Taub, however, does not argue that the forum-selection clause is invalid, instead contending that (1) the Defendants have waived the forum-selection clause and (2) the entire contract is unenforceable as to Taub.

Although it is difficult to follow the first argument, Taub appears to assert that Parker has waived its *forum non conveniens* argument by failing to raise it prior to answering the Complaint. A motion to dismiss based on *forum non conveniens*, however, is not the same as a motion to dismiss for improper venue under Rule 12(b)(3). The Supreme Court has held that under the doctrine of *forum non conveniens*, a court has the discretion to dismiss a case "even if jurisdiction and proper venue are established." *Am. Dredging Co. v. Miller*, 510 U.S. 443, 448 (1994). The doctrine of *forum non conveniens* is based on the inconvenience of the chosen venue, not the impropriety of venue under the federal venue statutes. *See id.* at 448-49. "Indeed the doctrine of *forum non conveniens* can never apply if there is . . . mistake of venue." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 504 (1947), *superseded by statute on other grounds as explained in Am. Dredging Co.*, 510 U.S. at 449 n.2; *see also Timberlane Lumber Co. v. Bank of Am. Nat'l Tr. & Sav. Ass'n*, 549 F.2d 597, 616 (9th Cir. 1976) (noting that in applying the doctrine of *forum non conveniens*,

---

[5] The Supreme Court also held that, where the transferor federal court is sitting in diversity, the court in the contractually selected venue should not apply the law of the transferor venue to which the parties waived their right. *Atl. Marine*, 571 U.S. at 64-66. Since this case involves a federal question, this factor of the altered calculus is inapplicable.

ORDER GRANTING MOTION TO DISMISS FOR FORUM NON CONVENIENS
CASE NO. 18-cv-07491-RS
11

proper venue is assumed), *superseded by statute on other grounds as explained in McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 813 n.8 (9th Cir. 1988). Consequently, Parker's failure to bring a motion to dismiss on grounds of *forum non conveniens* before answering the Complaint does not result in a waiver of the issue under Rules 12(g) and (h) of the Federal Rules of Civil Procedure because such a motion is not a motion to dismiss for improper venue under Rule 12(b)(3). *See Chateau des Charmes Wines Ltd. v. Sabaté USA, Inc.*, No. C-01-4203-MMC, 2003 WL 22682483, at *3 (N.D. Cal. Nov. 10, 2003).

      As for Taub's second argument, he contends the Admission Agreement is not enforceable against him, as he never received consideration from Parker. According to Taub, the contract's only language regarding him addressed his obligations to provide Parker with his cousin's financial resources to be used for her care, but that he received no benefit from the contract and was not promised any. The allegations in Taub's Complaint, however, base his claim upon the Admission Agreement's provision stating he was not personally liable for the costs of his cousin's care. Taub cannot rely on the contract as the basis for his FDCPA claim, while at the same time asserting the contract (and its forum-selection clause) is unenforceable against him. Moreover, there is nothing in his Complaint asserting that the Admission Agreement is invalid as applied to him. Even considering the merits of Taub's argument, his reasoning fails. By signing the Admission Agreement as the Resident Representative on his cousin's behalf, he agreed to assume the duty to ensure his cousin's financial resources were used towards her care. *Cf. White v. Jewish Ass'n on Aging*, No. 13-344, 2013 WL 5963128, at *5 (W.D. Pa. Nov. 7, 2013) (finding contractual provision requiring resident representative to apply resident's financial resources to pay for treatment costs valid and binding on resident representative). This practice is codified in federal regulations as a valid means for long term care facilities to ensure receipt of their residents' income and resources. 42 C.F.R. § 483.15(a)(3). Therefore the contract is enforceable against Taub.

      Turning to other threshold concerns regarding the consideration of the forum-selection clause, it must be determined if this dispute arises out of or is related to the Admission Agreement

such that the forum-selection clause controls. The Ninth Circuit has held that forum-selection clauses covering disputes "arising out of" a particular agreement apply only to disputes relating to the interpretation and performance of the contract itself. *Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th Cir. 2018). By contrast, forum-selection clauses covering disputes "relating to" a particular agreement apply to any disputes that reference the agreement or have some logical or causal connection to the agreement. *Id.* The dispute need not grow out of the contract or require interpretation of the contract in order to relate to the contract. *Id.* Here, the forum-selection clause uses both "arising out of" and "relating to" language. (Neuman Decl. ¶ 3.) The dispute both requires interpretation of the provision that prohibits holding Taub personally responsible for his cousin's care costs and is related to the contract as Taub asserts Defendants are pursing an illegal debt that is invalid by virtue of the Admission Agreement between the parties. Since Taub's dispute both arises out of and is logically connected to the parties' agreement, it is subject to the forum-selection clause.[6]

Moving to the merits, Taub asserts he would endure personal hardship by having to proceed with this litigation in New York and fears he may not be able to continue with the lawsuit in that forum. As discussed, however, private interests may not be considered in the *forum non conveniens* analysis where there is a valid forum-selection clause. Whatever difficulties Taub may face with litigating across the country, he had the chance to consider such potential hardships when he entered into the Admission Agreement with Parker and nevertheless promised to resolve his disputes in New York. *See Atl. Marine*, 571 U.S. at 67. Taub does not identify any public interest factors, such as administrative difficulties or local interest, that would make this an exceptional case in which dismissal should be declined despite the presence of a valid forum-selection clause. *See Atl. Marine*, 571 U.S. at 62 n.6, 64. Thus, Taub has failed to satisfy his

---

[6] A final threshold concern is whether Abrams LLP has standing to enforce the forum-selection clause, as it was not a party to the Admission Agreement. It is not necessary to resolve that issue, however, as Parker joins the motion to dismiss for *forum non conveniens*, and it has standing to enforce the forum-selection clause, as it was a party to the Admission Agreement with Taub.

burden of demonstrating an extraordinary situation warranting denial of Defendants' motion to enforce the forum-selection clause.

### D. Conditions

The Ninth Circuit acknowledges district courts have the discretion whether or not to impose conditions incident to *forum non conveniens* dismissals. *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1234-35 (9th Cir. 2011). Such discretion is abused where the district court fails to do so if there is a justifiable reason to doubt that a party will cooperate with the foreign forum, such as by raising a statute of limitations defense. *Id.* The Supreme Court in *Atlantic Marine* noted a dismissal works no injustice on a plaintiff bound by a valid forum-selection clause, but also did not foreclose the ability of a district court to impose conditions on the dismissal in its discretion. *Atl. Marine*, 571 U.S. at 66 n.8; *see also Randhawa v. Skylux, Inc.*, 629 F. App'x 802, 804-05 (9th Cir. 2015) (holding a district court did not abuse its discretion in failing to condition dismissal on the defendant's waiver of a statute of limitations defense in the alternative forum where plaintiffs never requested the court to impose such a condition and the court was not required to impose conditions *sua sponte*). Moreover, the Ninth Circuit has affirmed *forum non conveniens* dismissals that addressed statute of limitations concerns by requiring waiver in the foreign forum, *Carijano*, 643 F.3d at 1235, and district courts in this circuit routinely impose numerous conditions to ensure a party's cooperation with the foreign forum. *See, e.g.*, *Etaliq, Inc. v. Cisco Sys., Inc.*, No. CV-11-3672-GAF-FFMx, 2011 WL 13220445, at *8 (C.D. Cal. July 20, 2011); *STM Grp., Inc. v. Gilat Satellite Networks Ltd.*, No. SACV-11-0093-DOC-RZx, 2011 WL 2940992, at *10 (C.D. Cal. July 18, 2011). Thus, the conditions listed below will be imposed, which should adequately protect Taub's ability to litigate this action.

### V. CONCLUSION

For the foregoing reasons, New York is an available and adequate alternative forum, and the private and public interest factors favor dismissal. Accordingly, Defendants' motion to dismiss for *forum non conveniens* is granted and Taub's suit is dismissed on the following conditions: (1) that Abrams and Parker agree to submit to the jurisdiction of the relevant New

York courts, (2) that Abrams and Parker agree to waive any statute of limitations defense they might raise and to toll during the pendency of this action any statute of limitations that had not already expired when this action was filed, (3) that Abrams and Parker agree to make available any evidence and witnesses within its control that New York courts properly deem discoverable and relevant, (4) that Abrams and Parker agree to enforce any judgment awarded by New York courts, (5) that Abrams and Parker agree not to contest the applicability of California's Rosenthal Act or UCL to the transaction at issue or their applicability in New York state court, and (6) a New York court's acceptance of jurisdiction over Taub's claims. Taub may pursue a remedy in district court if Abrams or Parker violates any condition of dismissal. If Abrams LLP or Parker do not agree to these conditions, it should so inform the Court no later than fourteen days from the date of this order. A failure to file an objection to these conditions by that time will be deemed consent to these conditions of dismissal and the Clerk shall close the file.

**IT IS SO ORDERED**.

Dated: July 19, 2019

RICHARD SEEBORG
United States District Judge